OPINION
{¶ 1} On August 11, 2000, Margaret Ilene Baxter, Martin Baxter, Earl W. BaxterMoore, Patricia L. BaxterMoore, Danielle I. BaxterMoore, and Agapi G. BaxterMoore filed a complaint in the Court of Claims of Ohio against the Ohio Department of Transportation ("ODOT"). The Office of Risk Management ("ORM") was later added as a defendant. The complaint arose out of an automobile collision involving the named plaintiffs and an ODOT employee driving a state vehicle. Margaret and Martin Baxter are the parents of Patricia BaxterMoore, who is married to Earl BaxterMoore. The BaxterMoores have two minor daughters, Danielle and Agapi.
 {¶ 2} The complaint set forth many claims for relief, including claims sounding in personal injury/negligence and loss of consortium. Eventually, the defendants admitted liability, and the sole issue remaining for trial was whether ODOT's negligence proximately caused damages and the nature and extent of any such damages. In addition, the defendants settled with Margaret and Martin Baxter and with Earl BaxterMoore as to all but his loss of consortium claim.
 {¶ 3} A trial was held on November 5 and 6, 2001. In addition to the trial testimony, the parties submitted several trial depositions. The parties filed post-trial briefs.
 {¶ 4} On April 10, 2002, a decision and judgment entry were journalized. The trial court found, in part, that Patricia BaxterMoore had suffered a mild concussion as a result of the motor vehicle accident. The trial court awarded $19,081.91 for property damages, $25,000 for loss of income, $30,000 to Patricia BaxterMoore for noneconomic damages, $20,000 on Earl BaxterMoore's loss of consortium claim, and $5,000 each to the BaxterMoore's minor children for their loss of parental consortium claims.
 {¶ 5} The BaxterMoores (hereinafter collectively referred to as "appellants") have appealed to this court, assigning the following as error:
 {¶ 6} "1. THE TRIAL JUDGE ERRONEOUSLY OVERRULED PLAINTIFFS' MOTION TO EXCLUDE INADMISSIBLE PORTIONS OF DR. BOUMAN'S TESTIMONY.
 {¶ 7} "2. IN HIS DECISION AND JUDGMENT ENTRY, THE TRIAL JUDGE ERRED BY DENYING FUTURE DAMAGES WHEN HE RENDERED A FACTUAL FINDING THAT PATRICIA BAXTERMOORE'S BRAIN DAMAGE `COULD' IMPROVE WITH TREATMENT.
 {¶ 8} "3. THE TRIAL JUDGE'S DECISION AND JUDGMENT ENTRY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} In their first assignment of error, appellants contend the trial court erred in denying their motion to exclude certain portions of the testimony of an expert witness called by ODOT/ORM (hereinafter "appellees"). Dawn E. Bouman, Ph.D., testified at a deposition on October 23, 2001. As indicated above, the trial was held on November 5 and 6, 2001. On the first day of trial, November 5, 2001, appellants filed a motion to strike certain portions of Dr. Bouman's testimony, asserting that such testimony was not admissible expert testimony under the test set forth in Stinson v. England (1994), 69 Ohio St.3d 451. On the second and last day of trial, November 6, 2001, Dr. Bouman's deposition was admitted without objection. On November 13, 2001, appellees filed a memorandum contra appellants' motion to strike portions of Dr. Bouman's testimony. On December 11, 2001, the trial court filed an entry denying appellants' motion.
 {¶ 10} As to any issue involving waiver, we find that appellants properly preserved any possible error. During Dr. Bouman's deposition itself, appellants' counsel objected to the testimony at issue. He then filed a written objection/motion to strike with the trial court on the first day of trial. Given all of this, appellants did not waive any alleged error by failing to object at trial to the admission of Dr. Bouman's deposition.
 {¶ 11} We now turn to the issue of whether certain testimony of Dr. Bouman should have been excluded. Appellants contend this testimony did not meet the test set forth in Stinson. Specifically, appellants point to Dr. Bouman's testimony that Patricia BaxterMoore "might" get slightly better if Dr. Bouman's recommendations were followed. Appellants assert that such testimony was improper because it was not stated in terms of probability.
 {¶ 12} In Stinson, the Supreme Court held:
 {¶ 13} "The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability. * * * An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue. * * * Inasmuch as the expression of probability is a condition precedent to the admissibility of expert opinion regarding causation, it relates to the competence of the evidence and not its weight. * * * Consequently, expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue." Id. at paragraph one of the syllabus.
 {¶ 14} The testimony at issue here is not the same type of testimony of which the Supreme Court spoke in the first paragraph of the syllabus of Stinson. Stinson was dealing with causation in the context of whether an event is the proximate cause of an occurrence. Here, Dr. Bouman was simply testifying as to what might help Patricia BaxterMoore. The sole issue at trial was damages, and Dr. Bouman's testimony in this regard went to the amount of future damages Patricia BaxterMoore might have been entitled to, if any, and such testimony did not address causation as discussed in Stinson.
 {¶ 15} The primary rule governing admissibility of expert testimony is contained in Evid.R. 702 which states that if scientific, technical or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact at issue, a witness who qualifies as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise. There has been no contention that Dr. Bouman was not an expert. As such, her testimony was generally admissible as expert opinion. The issue becomes whether her testimony was probative of any issue, which is a different standard than admissibility which was at issue in Stinson. The issue of the probative value of Dr. Bouman's testimony will be addressed at length below.
 {¶ 16} Given all of the above, the trial court did not err in denying appellants' motion to strike and in admitting Dr. Bouman's testimony. Accordingly, appellants' first assignment of error is overruled.
 {¶ 17} Appellants' second and third assignments of error are interrelated and, therefore, will be addressed together. Appellants contend the trial court erred in failing to award future damages and that its judgment was against the manifest weight of the evidence. Specifically, appellants argue the trial court erred in denying future damages on the basis that Patricia BaxterMoore "could" improve with treatment. Appellants assert that the trial court made erroneous factual conclusions and based its decision on Dr. Bouman's testimony, which contradicted her written report. Appellants contend that the evidence clearly showed that Patricia BaxterMoore will never make a meaningful or significant recovery, regardless of the treatment she may receive. Accordingly, appellants request this court reverse the trial court's damages judgment and remand the matter for a re-determination of damages based on these facts.
 {¶ 18} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. Here, the trial court concluded, in pertinent part:
 {¶ 19} "Based upon the evidence presented at trial, the court finds that the collision proximately caused a puncture wound to [Patricia BaxterMoore's] right arm and a mild concussion. The court further finds that the testimony of Dr. Bouman was more persuasive than that of Dr. Granacher, and that [Patricia BaxterMoore's] condition could improve if she were to follow recommendations for treatment that were made by Dr. Bouman." (Decision at 4-5.)
 {¶ 20} As indicated above, the trial court's award included $25,000 for loss of income and $30,000 for noneconomic damages. The court made no award representing future economic damages. For the reasons that follow, we find the trial court's judgment was against the manifest weight of the evidence because, in part, it failed to make an award for future economic damages.
 {¶ 21} Prior to setting forth the evidence presented in detail, it will be helpful to emphasize the main facts which are, in essence, undisputed. First, as a result of the motor vehicle accident, Patricia BaxterMoore suffered a mild traumatic brain injury. Such brain injury, referred to as "post-concussive syndrome," resulted in Patricia BaxterMoore suffering significant memory and attention deficits and depression. As to the attention and memory problems, essentially all of the experts and treating professionals agreed that given the length of time from the accident and Patricia's failure to improve, these conditions were permanent. As to the depression component, essentially all of the experts and treating professionals agreed that the brain injury caused Patricia's depression. Thus, in general, we will not go through the abundance of evidence from the varying witnesses relating to these essential facts, as they were largely undisputed.
 {¶ 22} By way of brief background, Patricia BaxterMoore was involved in a motor vehicle collision on October 7, 1998. She was almost 37 years old at the time. During Patricia's first year of college, she began to lose her sight and was later diagnosed with macular degeneration. By the age of 20 or 21, she was declared legally blind. All the evidence showed that Patricia functioned remarkably well despite her disability. She married Earl, who is also blind, and they had a healthy daughter, Danielle. Patricia and Earl lived independently, including in New York City and Seattle, Washington. Patricia had no prior history of psychological problems. Prior to the accident, Mr. and Mrs. BaxterMoore had started their own computer hardware and software business for the visually impaired, and the business was progressing well. Patricia provided, in essence, all of the technical support for the business and was the "heart and soul" of the business. (Tr., Vol. II at 14.) Approximately two months prior to the accident, the BaxterMoores adopted a blind girl, Agapi, from Greece.
 {¶ 23} According to Patricia, everything changed after the accident. (Tr., Vol. I, at 74.) Again, Patricia suffered a mild concussion in the collision, and she developed post-concussive syndrome. She experienced frequent headaches. (Knox deposition at 11.) She had trouble with her memory and concentration; she could not think of the "right words." Id. She forgot conversations, and her short-term memory was affected more than her long-term memory. Id. She had no patience and was unable to work under pressure or not at all. Id. As for her role in the computer business, she was no longer able to explain to clients how to fix their computers. Id. By the time of trial, the BaxterMoores no longer had their business, and Earl was, essentially, taking care of everything — household and otherwise.
 {¶ 24} Robert P. Granacher, M.D., is a psychiatrist with a subspecialty in forensic psychiatry, and a substantial amount of his practice involves head injuries. (Granacher deposition at 7-8.) Dr. Granacher examined Patricia BaxterMoore on April 22 and 23, 1999 and generated a report. Id. at 11. He performed a Single Photon Emission Computed Tomography ("SPECT") scan and numerous neuropsychological tests on Patricia. Id. at 21-22. The SPECT scan should not be given in the absence of the neuropsychological testing. Id. at 22. The SPECT scan showed alteration of blood flow in two major parts of Patricia's brain the occipital area, which was related to her rod and cone disease (which caused her blindness), and the parietal areas, which Dr. Granacher stated was related to the problems stemming from the accident. Id.
 {¶ 25} Dr. Granacher indicated that Patricia BaxterMoore has two "primary problems." Id. at 26. She has a cognitive disorder of attention and memory due to brain dysfunction, and she has a mood disorder, i.e., depression. Id.
 {¶ 26} Dr. Granacher saw Patricia two years later, in May 2001. Id. at 28. She was more depressed, had significant impairment of attention, and a significant reduction in thought and motor speed. Id. at 30. Dr. Granacher stated that Patricia tested worse on everything. Id. at 31. Dr. Granacher further stated:
 {¶ 27} "* * * [M]ost brain injuries after a period of time become static. If the person's cognitive state changes, it must have an explanation other than a change in structure of the brain. And that explanation in this case is she has now developed a progressively worsening organic mood disorder, depression, from the original post-concussive injury." Id. at 31.
 {¶ 28} Dr. Granacher went on to state that at 12 to 18 months, from a neurological standpoint, a person has reached maximum medical improvement from any closed-head injury. Id. at 32. Here, Mrs. BaxterMoore's worsening condition was due to her depression, and her overall condition, including the depression, was a direct outcome of the motor vehicle accident. Id. at 32, 39. Dr. Granacher stated that her problems are permanent given that it had been three years since the accident. Id. at 39-40.
 {¶ 29} Craig A. Knox, M.D., is board certified in neurology, and 100 percent of his time is spent specializing in persons with memory disorders or brain injury. (Knox deposition at 6-7.) Dr. Knox saw Patricia BaxterMoore on June 29, 1999 and July 21, 1999. Id. at 8, 15. Dr. Knox diagnosed her with post-concussive syndrome due to the motor vehicle accident and indicated that this was causing most of her memory and attention problems. Id. at 18. He also felt that there was "some component of depression going on which was a potentially treatable component." Id. He prescribed her various medications, including Imipramine, an antidepressant. Id. at 15. Patricia noticed that her moods were more level when she was on the Imipramine. Id.
 {¶ 30} Dr. Knox stated that the most common symptoms of post-concussive syndrome were headaches, poor memory, poor concentration, dizziness, depression and perhaps some neck pain. Id. at 19. He indicated that most patients show considerable improvement three to six months after the head injury and that some improvement can occur perhaps a year or two later. Id. at 20. If the symptoms are still occurring three years later, they are probably permanent. Id. at 21.
 {¶ 31} Dr. Knox noted that Patricia's CAT scan, MRI and EEG came back normal; however, he stated that it is quite rare that such tests would show abnormalities in persons who have had a head injury. Id. at 34-35, 37, 48. Dr. Knox testified that the two most sensitive tests to detect any significant problems with the brain after a head injury are neuropsychological tests and a SPECT scan. Id. at 37-38. Dr. Knox noted that the neuropsychological tests and SPECT scan performed on Patricia BaxterMoore by Dr. Granacher were abnormal. Id. at 36.
 {¶ 32} Dr. Bouman is a licensed clinical psychologist who works predominately in rehabilitation and neuropsychology and treats people with traumatic brain injuries. (Bouman deposition at 4.) Dr. Bouman performed a neuropsychological exam of Patricia BaxterMoore on July 3, 2001. Id. at 13. In essence, Dr. Bouman's tests results were the same as Dr. Granacher's — Patricia suffered from severe attention and memory deficits and depression. Id. at 21; Bouman report. Dr. Bouman attributed Patricia's condition to the motor vehicle accident. (Bouman deposition at 39.)
 {¶ 33} At this point, we must point out that the trial court indicated that while Dr. Granacher had opined that the SPECT scan provided objective evidence of diminished brain activity, other evidence showed that the results of the SPECT scan did not correspond to Patricia BaxterMoore's attention and memory deficits. (Decision at 4.) Indeed, Dr. Knox testified that the SPECT scan results did not confirm the injuries or abnormalities, specifically, the memory and attention problems, experienced by Patricia BaxterMoore. (Knox deposition at 53-54.) Dr. Knox testified that the SPECT scan showed no diminished activities in the frontal or temporal lobes, which pertain to attention and memory. Id. at 52. In addition and on essentially the same bases, Dr. Bouman testified that the SPECT scan results did not correlate to attention or memory deficits. (Bouman deposition at 21.)
 {¶ 34} However, Dr. Knox stated that the SPECT scan results did not rule out the type of injury here and that he had other patients who had significant head injuries and yet had normal SPECT scans. (Knox deposition at 65.) Dr. Knox stated that the neuropsychological testing is the most likely test to show abnormalities and that Dr. Granacher had performed 11 such exams on Patricia BaxterMoore. Id. at 66. Dr. Knox testified that Dr. Granacher had done extensive neuropsychological testing on Patricia and that he would have performed them on Patricia had Dr. Granacher not because they are that important. Id. at 66-67.
 {¶ 35} On cross-examination, Dr. Knox was asked if he agreed that with all the diagnostic tests performed, from an objective standpoint, there was nothing to suggest Mrs. BaxterMoore was suffering from attention or memory problems. Id. at 55. Dr. Knox responded that there was an "abundance of evidence" to support the diagnosis. Id. He based this on his direct contact with Mrs. BaxterMoore and on the results of the neuropsychological testing performed by Dr. Granacher. Id. at 56. On re-direct, Dr. Knox indicated that despite the cross-examination and what he knows, he was still of the opinion that Patricia BaxterMoore suffered from post-concussive syndrome caused by the accident and that the symptoms she had been reporting over the years were true and genuine symptoms of the head injury. Id. at 67. Further, Dr. Bouman testified that SPECT scans were not in her area of expertise and that she would defer to Dr. Granacher's interpretation. (Bouman deposition at 43.)
 {¶ 36} Finally, Dr. Granacher testified that the SPECT scan confirmed Patricia BaxterMoore's brain problems. (Granacher deposition at 26.) Dr. Granacher stated that one cannot use the SPECT scan to accurately localize where problems are occurring in the brain — that it is not designed to do that — and that no one could do so accurately because of Mrs. BaxterMoore's visual impairment. Id. Again, Dr. Granacher stated that one of the problems in her brain that was detected by the SPECT scan was related to the motor vehicle accident. Id. at 22.
 {¶ 37} Given the above, to the extent the trial court disregarded Dr. Granacher's testimony and opinions as a whole, due to his opinion on the SPECT scan results and any contrary testimony, this was against the manifest weight of the evidence. The evidence from all the experts as to the SPECT scan in general and the specific results here confirm Dr. Granacher's opinions. Thus, the trial court erred to the extent it concluded that Dr. Granacher's opinions were unpersuasive.
 {¶ 38} Indeed, the overwhelming majority of the evidence shows that Patricia BaxterMoore suffered from significant memory and attention deficits and depression, and virtually all the experts and professionals, including Drs. Knox and Bouman, agreed that all of these problems stemmed from the accident.
 {¶ 39} We now turn to the main issue: whether the trial court should have awarded future economic damages. This issue turns on the evidence relating to Patricia BaxterMoore's condition and her prognosis. Again, virtually all the witnesses agreed that Patricia suffered from significant problems due to the motor vehicle accident. As to the memory and attention deficits, the evidence shows that such deficits are permanent and, for the most part, cannot be treated. For this reason alone, the trial court erred in failing to award Patricia future economic damages. Further, the trial court's decision was obviously based on its interpretation of Dr. Bouman's testimony that Patricia's condition was caused by depression and that such condition was treatable. For the reasons that follow, however, we find that the trial court erred in failing to award future economic damages based on Dr. Bouman's testimony.
 {¶ 40} Again, all experts and professionals agreed that Patricia BaxterMoore suffered from moderate to severe depression. More significantly, Drs. Knox, Granacher, and Bouman agreed that the depression was caused by the accident. (Knox deposition at 67; Granacher deposition at 26, 31, 45, 48, 62; Bouman deposition at 38-39, 44-46; and Bouman report.) In his report, Dr. Knox indicated that Mrs. BaxterMoore's depression was a "potentially treatable condition." Further, his report stated:
 {¶ 41} "Dr. Granacher has stated that in his opinion she does not have the mental capacity to engage in any work and that she has a 25% Class III neuropsychiatric impairment. She and her husband have a computer business in which they fix computers for visually impaired individuals. In general, I would agree with Dr. Granacher's comments, although it is certainly possible that over the next several months her symptoms may improve to the point where she may be able to return to work." (Knox report at 2.)
 {¶ 42} We note that Dr. Knox only stated that Patricia's depression was "potentially" treatable. Thus, this evidence cannot serve as a basis to deny future economic damages. If anything, it supports an award to cover long-term treatment for her depression. In addition, Dr. Knox only indicated that it was "possible" Patricia's symptoms might improve over the next several months and that she "may be able" to return to work. Dr. Knox's report was made in September 1999. As indicated above, Patricia's symptoms not only did not improve after September 1999, they worsened.
 {¶ 43} Dr. Granacher testified that it was much more difficult to treat a "closed-head injury depression" than it was a "natural-occurring depression," even with medication. (Granacher deposition at 33.) Dr. Granacher stated that in closed-head injuries, depression is the most common psychiatric outcome. Id. at 48. Dr. Granacher stated that generally, people will cycle out of depression, but Patricia has not. Id. at 40. Dr. Granacher opined that Patricia's depression was permanent. Id. He stated that Patricia BaxterMoore was one the most depressed persons after a head injury that he had seen in years, that it would not be easy to treat her, and that antidepressants would only help a little. Id. at 44-45. He did not expect that she would come back to even a moderate recovery, even with treatment. Id. at 45. He stated that it was not likely she would become independent and could go back to work. Id. at 46. As for counseling, Dr. Granacher stated, "* * * it would be a help; it's not curative but — and it's the compassionate humanitarian thing to do." Id. at 47.
 {¶ 44} Dr. Granacher stated that the mood disorder was contributing to Patricia's cognitive problems, that the two were intimately intertwined, and that you could not separate one from the other. Id. at 62-63. He testified that depression is treatable and that he could not say what Patricia's response to treatment would be. Id. at 63. Finally, Dr. Granacher testified as follows:
 {¶ 45} "Post-concussive depression, as I've pointed out, occurs in at least half of these kinds of head injuries. It can be severely debilitating and often is the major debilitating outcome. As I told the Judge, depression is a brain disorder not some little emotional problem because things aren't going well in your life. She has a brain disease and depression is part of that brain disease, and her brain disease came from this motor vehicle accident. It includes a cognitive component and a depressive component. They are intimately intertwined and cannot be separated. They both come and derive from this accident.
 {¶ 46} "* * *
 {¶ 47} "* * * [C]ognitive enhancers and the antidepressants may improve her ability to function, but at her level of current impairment, and we — we have to take her as she is. We had a blind lady, so we are talking about treating a blind lady. We're not talking about treating the people sitting around this table. The best we're going to bring her to is some improved level of function, but she's still going to be very impaired. She's going to still be a blind lady who now has a[n] attentional memory deficit and a depression, even though we may have improved the quality of the attentional deficit memory disorder and depression." Id. at 73-75.
 {¶ 48} Dr. Bouman spoke in general terms about what can cause depression. (Bouman deposition at 27-28.) She opined that Patricia's depression was treatable. Id. at 29-31. Dr. Bouman testified that "[a]s I stated in my written evaluation from 7-3-01, I do believe that implementation of the following recommendations might offer Ms. BaxterMoore at least a slight relief of her symptoms." Id. at 30. Specifically, Dr. Bouman's report stated:
 {¶ 49} "Although I do not believe that dramatic changes could be made in Ms. BaxterMoore's presentation, particularly given the length of time since her injury is approaching three years, I do believe that implementation of the following recommendations might offer Ms. BaxterMoore at least slight relief of her symptoms.
 {¶ 50} "1. I strongly recommend that Ms. BaxterMoore engage in individual and/or family psychotherapy focusing on adjustment to disability, education regarding traumatic brain injury and compensatory techniques and redefining family roles. While major depression is responsive to such treatment, this would, of course, only assist with a slight portion of her attentional problems.
 {¶ 51} "* * *
 {¶ 52} "5. Lastly, although Ms. BaxterMoore does not presently have ability to engage in gainful employment for which she is trained due to the severe difficulties she is experiencing with attention, concentration and memory, it is possible that with extensive aggressive treatment in all the areas recommended above, she would be able to engage in gainful employment on at least a very limited part time basis. If the following treatment recommendations can be followed and are maximally effective, Ms. BaxterMoore would require significant vocational rehabilitation support, whether privately and/or through the Bureau of Vocational Rehabilitation, to resume employment. Again, this depends on numerous optimal circumstances occurring to promote additional compensation. It is not expected that Ms. BaxterMoore would experience any additional medical healing at this time, but may be able to receive some relief of symptoms and learn alternate coping strategies and compensatory techniques." Bouman report at 6.
 {¶ 53} Dr. Bouman further testified that with treatment, it was probable that Patricia would be able to perform daily activities, take care of her children and return to some form of gainful employment. (Bouman deposition at 36-37.) However, this testimony was in the context of her report which, again, stated only that her recommendations "might" offer Patricia "slight" relief. Dr. Bouman testified that she stood by the statements in her report. Id. at 53. Lastly, Dr. Bouman testified that she could not guarantee it, but that most likely, "aggressive treatment * * * would assist" Patricia, and Patricia would be able to return to work "on a part-time basis." Id. at 54-55.
 {¶ 54} All of the above evidence shows that Mrs. BaxterMoore's depression, at the very least, will take aggressive measures to treat. Even if Dr. Bouman's testimony and opinions were accepted, Dr. Bouman herself stated that she did not believe dramatic changes will be made and only that her recommendations "might" offer "slight" relief. In addition, while Dr. Bouman stated that depression is treatable, she never indicated specifically the extent to which Patricia's depression could be relieved. Indeed, according to Dr. Bouman, if Mrs. BaxterMoore obtained relief, it would be due to "aggressive" and "extensive" treatment, and even this would only offer slight assistance. As for returning to work, again, Dr. Bouman stated in her report that with such treatment, Mrs. BaxterMoore would be able to engage in employment only on a "very limited" part-time basis.
 {¶ 55} In summary, no witness testified that Patricia BaxterMoore's condition, including her depression, would significantly improve even with treatment. The one witness who opined that Patricia could obtain some relief, return to daily activities and return to "very limited" part-time work, said so only if Patricia received "aggressive" and "extensive" treatment. Given this evidence, at the very least, future economic damages should have been awarded to provide for such treatment and for appellants' economic needs while Mrs. BaxterMoore attempts such treatment. In making such award, it should also be kept in mind that no witness testified that Patricia BaxterMoore can be totally or even significantly cured.
 {¶ 56} In addition, it is significant that a medical doctor, with a specialty in psychiatry and a practice involving traumatic brain injury, as opposed to a psychologist, who may not prescribe antidepressants, opined that Patricia will not likely see even a moderate recovery. As discussed at length above, Dr. Granacher's testimony and opinions were, in essence, not negated by other testimony and should not have been disregarded by the trial court. This, along with the fact that Dr. Bouman's testimony lacked a clear opinion of the extent of any potential recovery, supports a re-determination of damages. If anything, Dr. Bouman's testimony supports a finding that Patricia BaxterMoore may only experience slight improvement with treatment. A re-determination of damages must not only include future economic damages to account for the aggressive and extensive treatment needed by Mrs. BaxterMoore, but must include the factor that Mrs. BaxterMoore will never fully recover, even with such treatment. There was ample evidence, especially the testimony and report of Jack M. Sink, Ed.D, from which to make such award(s).
 {¶ 57} We also note that because there will be a re-determination of damages to include future economic damages and given the extent of Mrs. BaxterMoore's injuries and her poor prognosis, the trial court must also re-determine the amounts awarded to her family in their loss of consortium claims and the amount awarded Mrs. BaxterMoore for her non-economic damages.
 {¶ 58} For all of the above reasons, the trial court erred in failing to award future damages and, as indicated above, its judgment as a whole was against the manifest weight of the evidence. Accordingly, appellants' second and third assignments of error are sustained.
 {¶ 59} In summary, appellants' first assignment of error is overruled. Appellants' second and third assignments of error are sustained. The judgment of the Court of Claims of Ohio is reversed, and this cause is remanded to such court with instructions to re-determine damages in accordance with this opinion.
Judgment reversed and cause remanded with instructions.
BROWN, J., concurs.
LAZARUS, J., concurs in judgment only.